In order to survive a Crim.R. 29 motion, the state must present sufficient evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that Appellant committed every element of the offense charged.
Unquestionably, Ashawnte received life-threatening injuries. All the evidence presented indicated that Ashawnte's injuries were deliberately inflicted. By acquitting Appellant of felonious assault, the trial court rejected the State's assertion, that beyond a reasonable doubt, the Appellant was the individual who deliberately inflicted the injuries. Therefore, to sustain Appellant's conviction for child endangering the State needed to present sufficient evidence that if she did not injure her daughter, Appellant's failure to perform one or more duties owed to Ashawnte after someone else injured her created a substantial risk.
Because Ashawnte was described as irritable starting sometime Wednesday night or early Thursday morning, the injuries may have been inflicted at that time. If Appellant witnessed someone injuring Ashawnte, she had a duty to promptly seek medical care for her.[6] Under this scenario, Appellant delayed treatment for as long as a day and a half, and clearly failed her duty to seek prompt medical care for her child's injuries.
Failure to perform this duty alone, however, is not sufficient to sustain a conviction. In order to support a conviction, the State was also required to present sufficient evidence for a rational factfinder to determine that Appellant's failure, the delay in seeking treatment, created a substantial risk. The State presented absolutely no evidence that Appellant's delay in seeking treatment put Ashawnte in any different position than she would have been, had Appellant brought Ashawnte in immediately after she was injured. The State did not ask, nor did either physician testify, about whether Ashawnte's risk would have been lower if Appellant had brought her in immediately after she was injured, rather than delaying for up to a day and a half. In fact, when Ashawnte was diagnosed hospital with profoundly low hemoglobin approximately two and a half hours after arriving at the hospital, her physicians delayed administering what they described as a life- saving transfusion for an additional three and a half hours. The injuries to Ashawnte's spleen and liver required no medical intervention, and ultimately healed themselves. This recitation is not to minimize the severe trauma done to this child. However, in the absence of any direct testimony as to the critical issue of whether the delay in seeking medical care caused a risk to Ashawnte, the doctor's delay in beginning treatment once the injuries were diagnosed raises a reasonable doubt as to whether the delay caused by Appellant subjected Ashawnte to any additional risk.
Because the State failed to present evidence that any delay in seeking medical attention for her daughter caused any increased risk to her, I would sustain both assignments of error and would reverse the judgment of the trial court.
[6] If Appellant did not witness the injuries, the State did not even present sufficient evidence to establish beyond a reasonable doubt that Appellant failed a duty owed to her child. Both physicians repeatedly testified that there were absolutely no external signs that Ashawnte was severely injured. The State did not present any evidence as to what symptoms a child with Ashawnte's injuries might exhibit, or that a parent observing the symptoms Ashawnte was exhibiting should have brought her child in for medical attention. Absent such evidence, the State did not present sufficient evidence for a rational trier of fact to determine that her failure to seek medical help was a legally reckless disregard of her duties to Ashawnte.